IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 16, 2019

## JOSEPH MARK WHITMORE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Putnam County**
**No. 2015-CR-599   Gary McKenzie, Judge**
_____

### No. M2018-01526-CCA-R3-PC
_____

The Petitioner, Joseph Mark Whitmore, appeals from the Putnam County Criminal Court's denial of post-conviction relief, arguing that the post-conviction court erred in failing to find that trial counsel was ineffective in advising him that he could withdraw his guilty plea within thirty days of his sentencing hearing and in failing to adequately represent him at sentencing. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and D. KELLY THOMAS, JR., JJ., joined.

Michael J. Rocco, Sparta, Tennessee, for the Petitioner, Joseph Mark Whitmore.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The Petitioner was originally charged with possession of more than a half ounce of marijuana for sale or delivery in a drug free school zone and possession of more than a half gram of methamphetamine for sale or delivery in a drug free school zone. Pursuant to a plea agreement, the school zone enhancement was dropped, and the Petitioner entered a guilty plea to a single charge of possession with intent to sell or deliver more than a half gram of methamphetamine. He further received an agreed upon sentence of

eight years with the manner of service to be determined by the trial court.[1]  At the August 12, 2016 guilty plea hearing, the State presented the following facts:

> On March 18, 2015, the police came to [the Petitioner]'s residence because there was a domestic violence situation, and [the Petitioner] possibly was violating his bond conditions by being there.  So, the female, who was the subject of the bond conditions, opened the door, the police came in and eventually found their way back to [the Petitioner]'s room where they found a quantity of methamphetamine, over a half of a gram.  There were scales throughout the residence, all leading to the inference that the methamphetamine was for purposes of sale.  This was here in Putnam County.

During the guilty plea colloquy, the Petitioner acknowledged that he had gone over the "Plea of Guilty and Waiver of Jury Trial and Appeal" form with trial counsel.  He understood that by pleading guilty to a felony, he would lose certain trial, appeal, and citizenship rights.  The Petitioner affirmed that he had no "mental health issue or defect" that would keep him from understanding his plea.  When asked if trial counsel had "done a good job for [him]," the Petitioner responded, "Yes, sir."  The Petitioner agreed that he had spoken to trial counsel about his negotiated plea.  Asked if he had any questions for trial counsel before he entered his plea, the Petitioner said, "I just want to make sure that this is going to be at 30 percent[.]"  The trial court explained,

> This is a standard Range I plea, which is a 30 percent sentence, depending on what happens.  I think there's going to be a sentencing hearing.
>
> . . . .
>
> So if you are sentenced to serve the sentence – I mean, if you're sentenced to serve the sentence, I don't know, we'll see what that is, it would be at 30 percent.

The Petitioner indicated that he understood and had no further questions.  Asked if trial counsel had any questions of the Petitioner, trial counsel said,

> No, Your Honor.  Just, I guess, this, we've reached this conclusion today, and we've gone over it with [the Petitioner].  You understand we're

---

[1] Because the judgment of conviction is not included in the appellate record, we glean these facts from the guilty plea hearing and post-conviction hearing transcripts.

coming back for a sentencing hearing, and we've agreed upon an eight (8) year sentence?  It could be anywhere from probation, split confinement, up to incarceration for eight (8) years at 30 percent.  Those are the possibilities.

The Petitioner testified that he understood the possible sentences and that the manner of service of his sentence would not be determined until later by the trial court.  The Petitioner testified that he was entering his plea on his "own free will" and that no one had forced him to enter his plea or made him any promises.  At the end of the hearing, the trial court determined that the Petitioner's guilty plea was knowingly and voluntarily entered.  The trial court subsequently imposed an eight-year term of imprisonment.

On July 21, 2017, the Petitioner filed a pro se petition for post-conviction relief that was amended by appointed counsel on August 15, 2017.  In his amended petition, the Petitioner alleged that his right to effective assistance of counsel was violated based upon the following:

a.      That his attorney made misstatements of law that the [Petitioner] relied upon to his detriment, specifically that the [Petitioner] could withdraw his guilty plea for any reason.

b.      That his attorney failed to inform him of his right to appeal and the time limits placed upon that right.

c.      That he was pressured into signing a plea agreement that he did not fully understand.

d.      That he asked his attorney to present a series of mitigating factors at the sentencing hearing, but his attorney presented only one.

At the January 29, 2018 post-conviction hearing, the Petitioner explained the primary reason for filing his post-conviction petition.  He testified, "Well, I, I felt that I was forced to plead under duress.  And [trial counsel] had told me that if I – I could withdraw my guilty plea within 30 days, and we could try some things again.  After I tried that, I was denied, and that was the end."  The Petitioner met with trial counsel "maybe three times over thirteen months," but he admitted that he "may be a little off" regarding the thirteen months.  The Petitioner said trial counsel made "notation" of things the Petitioner would ask him to push for regarding his case, but he did not see any changes in the plea agreements.  Asked why he took the plea deal, the Petitioner responded, "I was told that it was the last court appearance before trial, and that,

- 3 -

considering the evidence that was led in through a suppression hearing, that I would most likely be sentenced to twelve (12) years." According to the Petitioner, trial counsel specifically told him that he could withdraw his plea within thirty days after sentencing.

The Petitioner also testified that trial counsel did not represent him as well as he thought he could have during the sentencing phase. According to the Petitioner, trial counsel failed to introduce several mitigating factors that could have reduced the Petitioner's sentence including that he was a "successful business co-owner," that he "had 17 months college experience during this time," and that he "hadn't had any charges for roughly 11 years." The Petitioner said he attempted to withdraw his plea about two weeks after he was sentenced. He wrote a letter to the public defender's office and, roughly two months later, he received a response that they "wouldn't be doing that." Once he received the response, the Petitioner began conducting legal research until he "found some things that weren't exactly correct." He subsequently filed for post-conviction relief. The Petitioner testified that he would not have entered the guilty plea if he had known that he would be unable to withdraw it within thirty days of sentencing. The Petitioner asked the court to set aside his guilty plea and proceed to trial.

On cross-examination, the Petitioner agreed that he was originally charged with possession of more than a half gram of methamphetamine with the intent to sell or deliver in a drug-free school zone, which carried a minimum sentence of eight years at 100%. He further agreed that trial counsel had filed a motion to suppress the evidence obtained during the search of the Petitioner's home, which was unsuccessful. He knew that his case was set for trial, but he entered a guilty plea to a lesser offense before trial. Asked "if [he] had been convicted of possessing that methamphetamine with the intent to sell or deliver, and the [S]tate provided that that was within 1,000 feet of a daycare, . . . your sentence would be at a minimum of eight (8) at one hundred percent (100%)?" the Petitioner responded, "Yes. But [trial counsel] advised me that if I pled guilty, I could have a sentencing hearing where I could have character witnesses and most likely get probation."

The Petitioner agreed that he chose to plead guilty to the "non-drug-free zone case" and proceed to a sentencing hearing, rather than go to trial and risk a minimum of eight years at 100% with the "drug-free zone" enhancement. The Petitioner said he had never had a "state charge before," so he was not clear on the "amounts to serve," but he understood the "very large penalty in terms of the percent of time [he would] have to serve that's associated with the drug-free zone." Asked what "bad advice" trial counsel gave him in relation to pleading guilty, the Petitioner said, "Well, that, that I could withdraw my guilty plea within 30 days of sentencing mainly." Asked, "if [trial counsel] had not told you that, you're saying that you would have wanted to go ahead and face the drug-free zone trial?" the Petitioner answered, "Possibly, uh-huh."

- 4 -

The Petitioner acknowledged that during the guilty plea colloquy, he never mentioned withdrawing his guilty plea following sentencing to the court. He kept that between him and his attorney because he "didn't think there was anything wrong with it at the time." He further acknowledged that the court did not include the possibility that the Petitioner could withdraw his plea. The Petitioner never wanted to take an eight-year sentence, but he did so because trial counsel told him it would be in his "best interest" and that he could "withdraw [his] plea 30 days after sentencing and retry some other things." When asked if that "ma[d]e sense" to go through the entire sentencing process and then "have a do over," the Petitioner stated that he "trusted [his] attorney."

The Petitioner said he did not testify at the sentencing hearing and never discussed doing so with trial counsel. The Petitioner and trial counsel only discussed character witnesses. The Petitioner testified that one witness, Jean Coty, was "very credible" and could have testified to certain mitigating factors, but she "didn't end up making it" to the sentencing due to her health. Barbara Bowman attended the sentencing and testified as a witness. The Petitioner said he was not sure how trial counsel was supposed to proceed on the day of sentencing without Coty, but thought trial counsel "could have spoke[n] up a little more as an attorney." The Petitioner understood that trial counsel could not testify on his behalf and that mitigating factors had to come from the Petitioner or someone that knew him.

Trial counsel, a twenty-three-year veteran of the Public Defender's Office, testified that he handled the Petitioner's case in criminal court. Initially, the State offered the Petitioner eight years to serve without the drug-free zone enhancement. Following an unsuccessful suppression hearing, the Petitioner and trial counsel met again to discuss the plea offer and other options, but the Petitioner was "resolute that he was not going to plead on the past offer . . . of the eight (8) to serve, that he was not interested in that . . . ." On August 12, both parties met to set a trial date and, on the same day, the State made a second offer of eight years with the manner of service to be determined by the trial court. Trial counsel said that he and the Petitioner had discussed the drug-free zone enhancement, and he believed the Petitioner understood the punishment.

Asked if he ever told the Petitioner that he could withdraw his guilty plea after sentencing, trial counsel responded, "That must have just been a miscommunication, because that's not in my practice." Trial counsel was unsure where the miscommunication arose. Over the course of his practice, trial counsel had filed only one motion to withdraw a guilty plea, which was based on a misunderstanding that both parties had regarding judicial diversion eligibility. Trial counsel testified that he was not sure if withdrawing the plea was something he and the Petitioner discussed, but he was certain that he had "just never done that." Had the Petitioner asked him if he could withdraw his plea, trial counsel would have said, "No, that's not going to happen." Trial

- 5 -

counsel was familiar with the law concerning the withdrawal of guilty pleas, and he first became aware of this allegation when the Petitioner filed his post-conviction petition.

In regard to the lack of mitigation or failure to call certain witnesses on behalf of the Petitioner at sentencing, trial counsel explained as follows,

> Well, he did have a witness here, an elderly lady, I believe that was his neighbor, who testified on his behalf, said nice things about [the Petitioner], was very helpful to him. [The Petitioner], we had discussed previous to this that there was someone he wanted, and I told him, "Well, they need to be here to be a witness at the sentencing hearing." If I recall correctly, it was – they were elderly, and I told him, "Well, we can subpoena them if they need to be here, but, typically, if you want them to be a character witness, it's best if they show up on their own."

The Petitioner never asked trial counsel to subpoena any witnesses, and trial counsel was unsure whether the witness would be available to testify until the date of the sentencing hearing. Trial counsel said he discussed having the Petitioner testify on his own behalf at the sentencing hearing but expressed his concern with the Petitioner's doing so because of facts contained in his presentence report. Following discussion, the Petitioner chose not to testify.

On cross-examination, trial counsel admitted that there must have been some miscommunication for the Petitioner to believe he could withdraw his guilty plea, but he did not recall discussing that with the Petitioner. Trial counsel described the Petitioner as a "conscientious client." He met with the Petitioner at least three times, but it could have been more. Trial counsel and the Petitioner "were in communication" throughout the case. Asked how much time he spent discussing the guilty plea with the Petitioner, trial counsel explained that the plea was not offered until August 12, the day the case was set to select a trial date. The plea was offered in court, and he and the Petitioner likely went to a "back room" or hallway and discussed the ramifications of the plea. Prior to this day, trial counsel had discussed other trial and plea options with the Petitioner.

At the conclusion of the hearing, the post-conviction court denied the petition, with extensive oral findings. On March 2, 2018, the post-conviction court illuminated its decision by written order, finding, in pertinent part, that the Petitioner failed to demonstrate by clear and convincing evidence that trial counsel was deficient. On August 20, 2018, appellate counsel filed an untimely notice of appeal and a motion to waive the timeliness filing requirement, which this court granted on September 4, 2018. This appeal is now properly before this court for review.

- 6 -

## ANALYSIS

The Petitioner argues that the preponderance of the evidence weighs against the post-conviction court's findings of fact. He specifically contends that the post-conviction court erred in failing to determine (1) that trial counsel erroneously advised the Petitioner as to his right to withdraw his guilty plea and (2) that trial counsel did not adequately represent him at sentencing. In response, the State contends, and we agree, that the post-conviction court properly determined that the Petitioner failed to demonstrate his claims through clear and convincing evidence.

In reaching our conclusion, we are guided by the following well-established law pertaining to post-conviction relief. Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (citations and internal quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Felts, 354 S.W.3d at 276 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim" and "a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697). This court reviews a claim of ineffective assistance of counsel, which is a mixed question of law and

- 7 -

fact, under a de novo standard with no presumption of correctness.  Smith v. State, 357 S.W.3d 322, 336 (Tenn. 2011).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence establishes that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms."  Goad, 938 S.W.2d at 369 (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  When ineffective assistance of counsel is alleged in the context of a guilty plea, the prejudice analysis

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Grindstaff, 297 S.W.3d at 216-17.  The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo.  Lane, 316 S.W.3d at 562.  To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently.  Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977), superseded on other grounds by rules as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)).  When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"  Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218).  If a guilty plea is not knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void.  Id. (citations omitted).

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'"  Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43).  In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and

5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

**I.** **Advice on Withdrawal of Guilty Plea.** The Petitioner essentially argues that the post-conviction court erred in accrediting the testimony of trial counsel that it was "not his practice" to advise clients that they could withdraw their guilty pleas within 30 days of sentencing over the testimony of the Petitioner that trial counsel did advise him he could do so. At the post-conviction hearing, the Petitioner testified that trial counsel told him that he "could withdraw [his] guilty plea within 30 days of sentencing mainly." Asked, "if [trial counsel] had not told you that, you're saying that you would have wanted to go ahead and face the drug-free zone trial?" the Petitioner answered, "Possibly, uh-huh." In contrast, trial counsel testified that there must have been some type of "miscommunication" for the Petitioner to believe he could withdraw his plea. Trial counsel testified that he was unsure whether he and the Petitioner ever discussed withdrawing his plea, but trial counsel had "just never done that." Had the Petitioner asked about withdrawing his guilty plea, trial counsel would have advised, "No, that's not going to happen." Trial counsel, a veteran public defender, testified that he had only filed one motion to withdraw a guilty plea throughout his entire career. Moreover, during the guilty plea colloquy, the Petitioner asked for assurance from the court that the eight-year sentence was to be served at 30%, but he was silent as to his intent to withdraw his plea.

In accrediting the testimony of trial counsel, the post-conviction court reasoned as follows:

> The Petitioner in this case asserts that he was improperly advised that he could withdraw his guilty plea within thirty (30) days of the sentencing hearing. After listening to the evidence presented, this Court cannot say that the evidence establishes by a clear and convincing level that [trial counsel] failed to advise his client properly under prevailing professional norms as judged within the wide range of reasonable professional assistance. After hearing testimony from both the Petitioner and [trial counsel], this Court credits the testimony of [trial counsel] as to any conflicts/disputed facts between the two. The Petitioner failed to meet his burden in establishing that [trial counsel] advised him that he would be able to withdraw his plea. As pointed out by the State, [the Petitioner] was advised during the plea process by the Court that by entering his plea, there would be no appeal. The Court then advised the Petitioner that the result of the plea would be a final conviction on his record. When asked if he

understood these things, the Petitioner responded that he did. This further bolsters the testimony of [trial counsel] that he would not have gave the erroneous advi[c]e of a withdrawal of plea after sentencing. At no time during the guilty plea process did the Petitioner indicate that he would be allowed to withdraw his plea upon a unfavorable outcome of sentencing. The evidence presented in this hearing indicated that the Petitioner was well represented and had a clear understanding of the options that were available to him.

The record does not preponderate against the findings of the post-conviction court. Accordingly, we conclude that the Petitioner has failed to establish that trial counsel was deficient. In addition, because the Petitioner was equivocal upon his intent to proceed to trial and risk a harsher sentence but for trial counsel's alleged erroneous advice, we likewise conclude that the Petitioner has failed to demonstrate any prejudice to his case. He is not entitled to relief.

**II. <u>Inadequate Representation at Sentencing Hearing.</u>** Next, the Petitioner argues that the post-conviction court improperly determined that trial counsel was not ineffective in representing him at sentencing. Specifically, the Petitioner argues that trial counsel failed to investigate mitigating evidence and issue a subpoena for Jean Coty, who could have presented evidence that may have mitigated his sentence. According to the Petitioner, he asked trial counsel to present three mitigating factors to the court at sentencing: (1) that the Petitioner was a successful business co-owner, (2) that he had seventeen months of college experience, and (3) that he had not been charged with a crime in eleven years.

In ruling on this issue, the post-conviction court found that "[f]ailure to issue subpoenas for potential witnesses aside, no evidence was presented at the Post-Conviction hearing on any substance of said witnesses that would have resulted in a different outcome at sentencing." The record does not preponderate against the finding of the post-conviction court. While the Petitioner testified that Coty would have been a "very credible" witness and could have presented mitigating factors at the sentencing hearing, he failed to introduce Coty as a witness during the post-convicting hearing. There was also no evidence at the post-conviction hearing that would have explained how Coty's alleged testimony would have mitigated the Petitioner's sentence. Because Coty was not present at the post-conviction hearing and because no additional evidence was presented regarding her testimony or possible mitigating factors, the Petitioner has failed to prove that trial counsel was deficient at sentencing. <u>Black v. State</u>, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should

be presented by the petitioner at the evidentiary hearing."). The Petitioner is not entitled to relief on this issue.

## **CONCLUSION**

Based on the foregoing reasoning and analysis, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE